MAURA C. FAHEY, OSB # 133549
maura@crag.org – (503) 525-2722
EMMA A.O. BRUDEN, OSB # 163525
emma@crag.org – (503) 525-2725
Crag Law Center
917 SW Oak St., Suite 417
Portland, Oregon 97205
Fax: (503) 296-5454

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **AUDUBON SOCIETY OF PORTLAND**, an Oregon non-profit corporation, **OREGON WILD**, an Oregon non-profit corporation, and **WATERWATCH OF OREGON**, an Oregon non-profit corporation<br><br><br><br>                     Plaintiffs,<br><br>      v.<br><br>**U.S DEPARTMENT OF THE INTERIOR**, a department of the United States Executive Branch, and **OFFICE OF THE SOLICITOR**, an office within the U.S. Department of the Interior,<br><br><br>                     Defendants. | Case No. 3:17-cv-01614<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(5 U.S.C. § 552)<br><br>(Freedom of Information Act) |

## NATURE OF ACTION

1.     Plaintiffs Audubon Society of Portland, Oregon Wild, and WaterWatch of Oregon (collectively "Plaintiffs") challenge Defendants the U.S. Department of the Interior's ("Interior") and the Office of the Solicitor's ("Solicitor") (collectively "Defendants") partial denial of Plaintiffs' Freedom of Information Act, 5 U.S.C. § 552, *as amended* ("FOIA"), request and constructive denial of Plaintiffs' administrative appeal.

2.     The documents Plaintiffs sought through FOIA primarily consist of Regional Solicitor's Opinions and other documents pertaining to the Solicitor's or the U.S. Fish and Wildlife Service's ("Service") interpretation of the Kuchel Act of 1964, 16 U.S.C. §§ 695k–695r. These documents are relevant to the Service's management of four national wildlife refuges ("refuges") in the Klamath Basin National Wildlife Refuge Complex ("Klamath Complex"), which consists of six refuges total.  In the Solicitor's response to Plaintiffs' request, the Solicitor withheld certain documents and claimed it could not locate certain documents.  Plaintiffs administratively appealed the Solicitor's determination.  As of the date Plaintiffs filed this complaint, Defendants have not responded to Plaintiffs' administrative appeal.

3.     To remedy these violations of law, Plaintiffs seek declaratory relief stating that Defendants have failed to comply with FOIA and injunctive relief ordering Defendants to release all of the records sought in this action to Plaintiffs immediately.

## JURISDICTION AND VENUE

4.     Jurisdiction is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B) because this action arises under FOIA, 28 U.S.C. § 1331 because Plaintiffs' claims present a federal question, and 28 U.S.C. § 1346 because this action involves the United States as a defendant.  A present, actual, and justiciable controversy exists between the parties.  The requested relief for

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—1

declaratory judgment is proper under 28 U.S.C. § 2201, and the requested injunctive relief is proper under 28 U.S.C. § 2202.

5.      The challenged agency action is subject to this Court's review under 5 U.S.C. §§ 702, 704, and 706.  Defendants have waived sovereign immunity in this action pursuant to 5 U.S.C. § 702.

6.      Venue is proper in the Portland Division of the United States District Court for the District of Oregon pursuant to 5 U.S.C. § 552(a)(4)(B), 28 U.S.C. § 1391(e), and Local Rule 3-2(b) because Plaintiffs each reside and maintain their primary place of business in Portland, Oregon, and because a substantial part of the events or omissions giving rise to the claims occurred in this divisional venue and judicial district.

## PARTIES

### Plaintiffs

7.      Plaintiff AUDUBON SOCIETY OF PORTLAND ("Portland Audubon") is a nonprofit organization with over 15,000 members.  Portland Audubon was founded in 1902 in part to help establish refuges in the Klamath Basin.  Portland Audubon's mission is to promote the understanding, enjoyment, and protection of native birds, other wildlife, and their habitats. Portland Audubon has members that regularly visit, use, and enjoy the Klamath Complex for bird watching and other recreational, aesthetic, scientific, educational, and spiritual purposes, and Portland Audubon's members will continue to do so on a regular basis indefinitely into the future.

8.      Portland Audubon engages in conservation work to protect and advocate for birds and other wildlife in Oregon and throughout the Klamath Basin region.  Portland Audubon also provides education to its members and the public, maintains nature sanctuaries to protect habitat

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—2

and ecosystems, and organizes birding and natural history activities.  Restoring and protecting
the health of the refuges in the Klamath Basin is of paramount importance to birds along the
Pacific Flyway.  Portland Audubon has specifically focused resources on the Klamath Basin area
in light of the drought emergency that has plagued the region.  Portland Audubon staff track
developments in the region and provide education and information to its members and the public
through action alerts, press releases, fact sheets, reposting of letters to lawmakers and
information distributed by the Service, the Solicitor, and the Interior relating to the Klamath
Complex.

9.    Plaintiff OREGON WILD is a nonprofit organization with approximately 13,000
members and supporters throughout the state of Oregon and the Pacific Northwest.  Oregon Wild
is headquartered in Portland, Oregon, and has field offices in Eugene, Oregon; Enterprise,
Oregon; and Bend, Oregon.  Oregon Wild and its members are dedicated to protecting and
restoring Oregon's lands, wildlife, and waters as an enduring legacy.  Oregon Wild has a
program specifically focused on restoring balance to the Klamath Basin to protect fish, wildlife,
and water resources.  For nearly two decades Oregon Wild has been a leading voice for
conservation in the Klamath Basin.  The interests of Oregon Wild and its members in observing
and enjoying the wildlife in and around the Klamath Complex are dependent, and will continue
to be dependent, on the maintenance of healthy and viable wildlife habitat and water resources
within the Klamath Complex.

10.    To achieve its goals, Oregon Wild disseminates a wide array of educational and
informative materials addressing the issues surrounding wildlife and water resources in the
Klamath Complex to government agencies, members of Congress, and the general public.  These
materials include, but are not limited to, fact sheets, white papers, letters to Congress, press

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—3

*Crag Law Center*
*917 SW Oak St. Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2722*

releases, reprints of news articles, and action alerts.  Oregon Wild is part of a coalition of water

conservation and wildlife organizations with extensive expertise in the Klamath Basin that has

urged managers and lawmakers to address the dire water situation that threatens and negatively

impacts fish and wildlife in the refuges within the Klamath Complex.

11.    Plaintiff WATERWATCH OF OREGON ("WaterWatch") is a nonprofit water

and river conservation organization devoted to restoring and protecting natural flows in Oregon's

rivers to sustain native fish, wildlife, and the people who depend on healthy rivers.  WaterWatch

has its main office in Portland, Oregon, and maintains a longstanding field office and staff

presence in southern Oregon.  For over a decade, WaterWatch has devoted its time and expertise

to advocating for restoring the Klamath Basin by bringing water demand back into balance with

the natural abilities of the system to ensure sufficient water for fish, wildlife, wetlands, and the

Klamath Complex.  WaterWatch also seeks to increase legal compliance and agency

accountability on water allocation and other management decisions that affect the Klamath

Basin.

12.    WaterWatch achieves its goals by holding regulators accountable, working with

the lawmakers to pass balanced water legislation, educating the public, submitting testimony and

comments to lawmakers and agencies, and when necessary, litigating on behalf of the public

interest in healthy rivers.  Many members and supporters of WaterWatch visit and enjoy the

lands and waters in the Klamath Basin, including the Klamath Complex, to engage in hiking,

fishing, hunting, photography, education, watershed research, and wildlife observation.

13.    Each Plaintiff regularly uses FOIA to obtain records from many federal offices

and agencies, including the Solicitor and the Interior.  Plaintiffs bring this action on their own

behalves and on behalf of their members and staff, who use and benefit from information

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—4

*Crag Law Center*
*917 SW Oak St. Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2722*

obtained through FOIA regarding the Klamath Complex.  Plaintiffs and their members are being, and will be, harmed by Defendants' failure to disclose the requested documents, respond to Plaintiffs' administrative appeal in a timely manner, and conduct an adequate search.  These harms are traceable to Defendants' conduct and would be remedied by the relief sought in this action.

**Defendants**

14.     Defendant UNITED STATES DEPARTMENT OF THE INTERIOR is the federal executive department responsible for management and conservation of federal lands and natural resources.  The Interior is ultimately responsible for deciding administrative appeals of FOIA determinations of the Office of the Solicitor.

15.     Defendant OFFICE OF THE SOLICITOR is an office within the U.S. Department of the Interior.  The Solicitor performs legal work for the Interior and has possession or control of the records that Plaintiffs seek.  The Solicitor is an agency within the meaning of FOIA.  5 U.S.C. § 552(f).

## LEGAL BACKGROUND

16.     FOIA's basic purpose is "to open agency action to the light of public scrutiny." *U.S. DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976)).  "Congress believed that this philosophy, put into practice, would help 'ensure an informed citizenry, vital to the functioning of a democratic society.'"  *U.S. DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).

17.     To achieve these important goals, FOIA requires federal agencies to make records in their possession or control available to the public upon request, unless one of FOIA's nine

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—5

specific exemptions applies.  5 U.S.C. § 552(a), (b)(1)–(9).

18.     When a federal agency searches for responsive records, it has an obligation to conduct a search that is reasonably calculated to uncover all records responsive to the request. *Id.* § 552(a)(3)(C)–(D).  The agency fulfills this obligation only if it demonstrates beyond material doubt that its search was reasonably calculated to uncover all relevant documents.

19.     Within twenty working days of receiving a FOIA request, a federal agency that receives a FOIA request must make a determination of whether to disclose the requested records. *Id.* § 552(a)(6)(A)(i).

20.     If an agency denies part of a FOIA request, FOIA provides the requestor with a right of appeal to the head of that agency.  *Id.* § 552(a)(6)(A)(i).  The agency must "make a determination with respect to [the] appeal within twenty [working] days" after receiving the appeal.  *Id.* § 552(a)(6)(A)(ii).  A violation of FOIA's statutory time limits may be construed as a denial.  *Id.* § 552(a)(6)(C)(i).

21.     A requestor has "exhausted his administrative remedies" and may sue in federal district court to compel the agency to disclose any improperly withheld records when the agency does not make a determination with respect to an appeal within twenty working days of receiving the appeal.  *Id.* § 552(a)(4)(B), (a)(6)(A)(ii), (a)(6)(C)(i); *see also* 43 C.F.R. § 2.62(c)(2) (DOI's regulations governing timeliness for responses to FOIA appeals).

22.     An agency carries the burden of demonstrating to a court that it has lawfully withheld responsive records consistent with FOIA.  5 U.S.C. § 552(a)(4)(B).  When making a determination to withhold a record that has been requested under FOIA, an agency must show that one of FOIA's nine exemptions apply.  *Id.* § 552(b)(1)–(9).

23.     FOIA Exemption 5 ("Exemption 5") allows, but does not require, federal agencies

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—6

to withhold records that are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Id.* § 552(b)(5). Exemption 5 has been interpreted to incorporate several common law discovery privileges that apply to the government in litigation, including, documents covered by the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082, 1084 n.1 (9th Cir. 1997).

24.    As part of Exemption 5, the deliberative process privilege protects agency records with three characteristics. First, the record must document a communication between or among agency employees. 5 U.S.C. § 552(b)(5). Second, that communication must be deliberative; "a direct part of the deliberative process [is] . . . that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C. Cir. 1975). Third, the record must be pre-decisional, meaning it was generated while the agency was deliberating its decision. *Jordan v. U.S. DOJ*, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc).

25.    A second part of Exemption 5 is the attorney work-product privilege. This privilege "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980). Importantly, this privilege only applies to documents prepared in contemplation of litigation. *Id.*

26.    A third part of Exemption 5 is the attorney-client privilege, which protects confidential disclosures "made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (internal ellipsis and quotation omitted). The mere fact that someone is a

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—7

lawyer or is included in a communication does not automatically render the communication privileged. *Id.*; *see United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1075 (N.D. Cal. 2002).

27.     Even if an agency carries its burden to demonstrate that the requested material is covered by Exemption 5, an agency may not withhold a record if it has waived the privilege. The privilege is waived when an agency discloses the confidential communication to a third party.  The privilege is also waived when the agency adopts or incorporates the record in setting forth agency position or policy on a matter.

28.     Even if an agency can meet its burden to prove that a responsive record contains Exemption 5 privileged information, and it has not waived the privilege, the agency must nevertheless disclose any non-exempt, "reasonably segregable portion of a record." *Id.* § 552(b). As with the applicability of FOIA's exemptions, the agency carries the burden to prove that responsive records include no reasonably-segregable portions.

29.     Hence, an agency that wishes to withhold a responsive record from the FOIA's disclosure mandate pursuant to Exemption 5 must prove that the record contains confidential legal information subject to Exemption 5, that the agency did not waive the privilege by disclosing the information to a third party or incorporating it into agency policy, and that the record contains no reasonably-segregable portions which must be disclosed.

## STATEMENT OF FACTS

30.     The Service is an agency within the Interior, responsible for managing of all refuges in the United States.

31.     Plaintiffs have been engaged in the Service's management of the Klamath Complex, which consists of six refuges on the Oregon–California border.  To ensure proper

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—8

management and preservation of the Klamath Complex, Plaintiffs have worked to understand the complicated history and the Service's legal obligations for the refuges within the Klamath Complex.

32.     As part of this work, on June 20, 2016, Plaintiffs submitted a FOIA request to the Solicitor's Pacific Southwest and Pacific Northwest Region offices for documents related to the Service's management of waterfowl and the agricultural leaseland program within the Klamath Complex, specifically focusing on Tule Lake and Lower Klamath Refuges.  Ex. B at 1.

33.     More specifically, Plaintiffs sought Regional Solicitor's Opinions and other documents pertaining to the Solicitor's or the Service's interpretation of the Kuchel Act of 1964, which established purposes and obligations for four refuges within the Klamath Complex.  *Id.* Plaintiffs specifically listed three Solicitor's Opinions that they sought: (1) "Bureau of Reclamation Withdrawals on Kuchel Act Lands," September 22, 1987 ("1987 Opinion"); (2) "Refuge and Farming Activities at Tule Lake NWR," July 15, 1994 ("1994 Opinion"); and (3) "Certain Legal Rights and Obligations Related to the U.S. Bureau of Reclamation, Klamath Project for Use in Preparation of the Klamath Project Operations Plan (KPOP)," July 25, 1995 ("1995 Opinion").  *Id.* at 2.

34.     Plaintiffs clarified that they also sought any other Solicitor's Opinions addressing the Kuchel Act not specifically identified in the request.  *Id.*

35.     On June 28, 2016, Mr. Lance Purvis, a FOIA Officer for the Solicitor, sent Plaintiffs a letter, acknowledging receipt of Plaintiffs' FOIA request.  *Id.* at 8.

36.     On August 11, 2016, Mr. Purvis informed Plaintiffs that he had originally placed Plaintiffs' request on the "normal" processing track but subsequently realized that the request would fall into the "exceptional/voluminous" processing track because the Solicitor's Office

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—9

would need to search for, collect, and examine a voluminous amount of separate and distinct records. *Id.* at 10.

37.      On August 12, 2016, Plaintiffs received the first batch of responsive documents. In the accompanying letter, Mr. Purvis indicated that the search yielded 280 pages of responsive records, but only 17 of these pages were released to Plaintiffs. *Id.* at 13.  The remaining 263 pages were withheld in full pursuant to Exemption 5.  *Id.*  Mr. Purvis indicated that this was the first installment of responsive records and did not completely satisfy Plaintiffs' request.  *Id.* Mr. Purvis did not include an index for the documents provided, nor for the documents withheld. Mr. Purvis did not explain which privilege the Solicitor was asserting under Exemption 5 for withholding documents.  *Id.* at 13–14.  The first installment did not include any Solicitor's Opinions.

38.      Plaintiffs submitted a follow-up response via email that same day, clarifying that they still sought the specifically requested Solicitor's Opinions, which were not included in the first release.  *Id.* at 11–12.  Plaintiffs also informed Mr. Purvis that they obtained the 1995 Opinion, so they no longer sought that document.  *Id.* at 11.  Another FOIA Officer, Erin Roberts, responded that same day, explaining that the attorneys conducting the search were aware of those specific items that Plaintiffs requested.  *Id.*

39.      On August 18, 2016, Plaintiffs received the second batch of documents.  *Id.* at 17. Mr. Purvis explained that this search yielded 83 pages of documents, and all 83 pages were released to Plaintiffs in full.  *Id.*  Mr. Purvis explained that this release also did not completely satisfy Plaintiffs' request, and more installments of records would follow.  *Id.*  Mr. Purvis did not include an index for the documents provided.  The second installment did not include any Solicitor's Opinions.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—10

40.    On August 19, 2016, Ms. Roberts requested clarification about whether Plaintiffs were only seeking documents, such as opinions and letters, or whether Plaintiffs were seeking emails as well. *Id.* at 19. Plaintiffs responded that same day, informing Ms. Roberts that they were only seeking documents, primarily Solicitor's Opinions and memoranda. *Id.*

41.    On June 30, 2017, Plaintiffs requested a status update for the requested documents. *Id.* at 18. On July 7, 2017, another FOIA Officer, Angela Moore, responded that the third and final installment of responsive documents for the request was being reviewed by attorneys, and Plaintiffs would receive a response within the next two weeks. *Id.*

42.    On July 24, 2017, Plaintiffs requested another status update for the third release of documents. *Id.* That same day, Mr. Purvis provided the decision letter and final installment of responsive documents. *Id.* at 21. Mr. Purvis indicated that the final search yielded 755 additional pages of records responsive to Plaintiffs' request; 201 pages were released in full, and 554 pages were withheld under Exemption 5. *Id.* Like the first installment, Mr. Purvis did not include an index for the documents provided, nor for the documents withheld. Mr. Purvis did not explain which privilege the Solicitor was asserting under Exemption 5 for withholding documents. The final installment included excerpts from various unlabeled documents, making it difficult to determine the origin or relevance of some excerpts. The final installment did not include any Solicitor's Opinions.

43.    On July 31, 2017, Plaintiffs requested clarification about whether the Solicitor's Opinions were included in the documents withheld pursuant to Exemption 5. *Id.* at 27. On August 1, 2017, Ms. Moore responded that the 1994 and 1995 Opinions were withheld in full pursuant to Exemption 5, and the 1987 Opinion was not located during the search. *Id.* Ms. Moore did not explain which privilege the Solicitor was asserting under Exemption 5 for

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—11

*Crag Law Center*
*917 SW Oak St. Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2722*

withholding the Solicitor's Opinions.

44.     Through the responsive documents provided by the Solicitor, Plaintiffs have learned of additional Solicitor's Opinions or memoranda that would likely fall within the scope of Plaintiffs' request, including (1) "Kuchel Act Lands and Refuge Revenue Sharing Act," February 10, 1971 ("1971 Opinion"); (2) "Effect of Public Law 94-223 on Kuchel Act Lands," April 16, 1976 ("1976 Opinion"); (3) "Oregon Assistant Attorney General's 3/18/96 Letter," January 8, 1997 ("1997 I Opinion"); and (4) "Tule Lake NWR—Sump Rotation," November 14, 1997 ("1997 II Opinion").  Ex. A at 4–5.

45.     Various relevant Solicitor's Opinions have been previously disclosed to members of the public.  For example, among the documents disclosed to Plaintiffs were excerpts from an index to an administrative record for use in litigation.  These excerpts indicated that the 1971, 1976, 1994, 1995, 1997 I, and 1997 II Opinions were included in that record in full as part of that lawsuit, and were disclosed to the public as part of that lawsuit.  As another example, among the documents disclosed to Plaintiffs was a letter dated January 15, 1999, from an assistant regional solicitor to a member of the public, and the letter indicated that the 1987 Opinion was attached to that letter.  The attachment was not included in the documents disclosed to Plaintiffs.  The assistant regional solicitor explained that the 1987 Opinion had recently been included as an exhibit to a plaintiff's motion for summary judgment.

46.     Withholding the relevant Solicitor's Opinions constitutes a partial denial of Plaintiffs' request.

47.     On August 11, 2017, Plaintiffs administratively appealed the Solicitor's final decision responding to Plaintiffs' request on several grounds: (1) the Solicitor improperly invoked Exemption 5; (2) the Solicitor improperly withheld officially acknowledged records;

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—12

*Crag Law Center*
*917 SW Oak St. Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2722*

(3) the Solicitor failed to conduct an adequate search; and (4) the Solicitor violated FOIA procedure regarding timeliness and fee waivers. *Id.* at 5–10.

48.     Since submitting the appeal, counsel for Plaintiffs has called the FOIA Appeals Office on August 22, 2017 and September 19, 2017, and has emailed on September 12, 2017, requesting an official acknowledgment of receipt and a status update.  During the August 22, 2017 phone call, the person that answered told Plaintiffs' counsel that the appeal had been assigned a tracking number, but she had no additional details.  During the September 19, 2017 phone call, the person that answered said she had no additional details, but she would pass along Plaintiffs' request to a FOIA appeals officer.  Plaintiffs have not received any telephonic or written communications.

49.     On the date Plaintiffs filed this complaint, more than twenty working days had passed since the Solicitor received Plaintiffs' administrative appeal, and Plaintiffs had not received any official acknowledgement or determination. *See* 5 U.S.C. § 552(a)(6)(A)(ii); *see also* 43 CFR § 2.62.  Accordingly, Defendants constructively denied Plaintiffs' administrative appeal.

## FIRST CLAIM FOR RELIEF

50.     Plaintiffs re-allege and incorporate all preceding paragraphs into the claim below.

51.     The Office of the Solicitor is subject to FOIA.

52.     The responsive records or portions of records that the Solicitor withheld are agency records within the meaning of FOIA.

53.     The Solicitor's Opinions and various other documents that the Solicitor withheld are not exempt from release under FOIA Exemption 5 because the Solicitor has not demonstrated that those records are "inter-agency or intra-agency memorandums or letters which would not be

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—13

*Crag Law Center*
*917 SW Oak St. Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2722*

available by law to a party other than an agency in litigation with the agency." 5 U.S.C.
§ 552(b)(5).

54.     The Solicitor's Opinions that the Solicitor withheld, and perhaps other documents
that the Solicitor withheld, are not exempt from release under FOIA Exemption 5 because the
agency previously waived the privilege through public disclosure of the documents.

55.     The Solicitor improperly withheld the records or portions of records by failing to
respond to Plaintiffs' administrative appeal within the twenty working days required by FOIA.

56.     Plaintiffs have a statutory right under FOIA to the responsive records or portions
of records that the Solicitor withheld, and Plaintiffs are entitled to judicial review of the
Solicitor's failure to promptly release those records. 5 U.S.C. § 552(a)(4)(B).

57.     Plaintiffs exhausted their administrative remedies by filing a timely appeal, to
which the Solicitor has not responded.

### SECOND CLAIM FOR RELIEF

58.     Plaintiffs re-allege and incorporate all preceding paragraphs into the claim below.

59.     FOIA required the Solicitor to conduct a search that was reasonably calculated to
uncover all records responsive to Plaintiffs' request. 5 U.S.C. § 552(a)(3)(C)–(D).

60.     The Solicitor did not provide an exhaustive list to Plaintiffs of documents that the
agency was unable to locate in its search, but upon request, the Solicitor explained that it could
not locate the 1987 Opinion. The Solicitor did not explain whether there were other documents
it could not locate. Within the past twenty years, the Solicitor was able to locate the
1987 Opinion, and it disclosed this opinion to a member of the public. When the Solicitor
disclosed the document, the Solicitor referenced that the document was available as an exhibit to
a lawsuit.

61.     The Solicitor has failed to demonstrate that it conducted a search reasonably calculated to uncover all responsive agency documents.

62.     The Solicitor violated FOIA's mandate to search for responsive records.  5 U.S.C. § 552(a)(3)(C)–(D).

## THIRD CLAIM FOR RELIEF

63.     Plaintiffs re-allege and incorporate all preceding paragraphs into the claim below.

64.     The U.S. Department of the Interior is a federal executive department subject to FOIA.

65.     The Office of the Solicitor is an office within the Interior.

66.     The FOIA Appeals Officer in the Interior's Office of the Solicitor is responsible for deciding appeals of FOIA denials within the Interior.

67.     The Interior improperly withheld the records or portions of records, failed to conduct an adequate search, and failed to respond to Plaintiffs' administrative appeal within twenty working days, as required by FOIA.  43 C.F.R. § 2.62.

68.     Plaintiffs have a statutory right under FOIA to the responsive records or portions of records that the Solicitor withheld, and Plaintiffs are entitled to judicial review of the Interior's failure to promptly release those records and to respond to Plaintiffs' administrative appeal.  5 U.S.C. § 552(a)(4)(B).

69.     Plaintiffs have exhausted their administrative remedies by timely filing an administrative appeal, to which the Interior, through the Solicitor, has not responded.

//

//

//

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—15

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and issue the following relief:

A.      Order Defendants to immediately disclose to Plaintiffs all of the records sought in this action;

B.      Declare that Defendants' failure to disclose the requested documents is unlawful under FOIA, 5 U.S.C. § 552(a)(4)(B);

C.      Declare that Defendants' failure to timely make a determination on Plaintiffs' administrative appeal is unlawful under FOIA, 5 U.S.C. § 552(a)(6)(A)(ii);

D.      Award Plaintiffs their reasonable fees, costs, expenses, and disbursements, including reasonable attorneys' fees associated with this litigation, pursuant to FOIA, 5 U.S.C. § 552(a)(4)(E), the Equal Access to Justice Act, 28 U.S.C. § 2412, or other applicable statutes; and

E.      Grant such additional relief as the Court deems just and proper.

DATED this 12th day of October 2017.

Respectfully submitted,

s/ Emma Bruden
Emma A.O. Bruden, OSB # 163525
Tel: (503) 525-2725
Email: emma@crag.org
Maura C. Fahey, OSB # 133549
Tel: (503) 525-2722
Email: maura@crag.org
Crag Law Center
917 SW Oak St., Suite 417
Portland, Oregon 97205
Fax: (503) 296-5454

*Attorneys for Plaintiffs*

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF—16